IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD MOORE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 14-CV-09863 |
| TRANSPORT HOLDING LLC, | ) ) Judge John J. Tharp, Jr. |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Richard Moore sued his former employer, Transport Holdings LLC[1] for racial discrimination.[2] Moore alleges he was terminated because he is African American and treated differently because of his race during and after his employment. Transport Holdings moved for summary judgment, on the grounds that Moore had not met their legitimate expectations during his employment and that it did not treat similarly situated employees outside of the protected class more favorably. Because Moore has not produced admissible evidence that creates a dispute of material fact on the latter issue, Transport Holding's motion for summary judgment is granted.

## BACKGROUND

On a motion for summary judgment, the record is construed in the light most favorable to Moore. *See Liu v. Cook Cnty.*, 817 F.3d 307, 309 (7th Cir. 2016). The following facts are

---

[1] The initial complaint referred to "Cars Towing and Transport" and "Transport Holding LLC" as the defendants. Although the complaint and answer were inconsistent in their use of "Holding" and "Holdings," the parties appear to have agreed the defendant's proper name is "Transport Holdings LLC," which does business as "Cars Towing & Transport." Thus, the Court refers to the defendant as "Transport Holdings LLC" or "Transport Holdings."

[2] Moore also brought retaliation claims, which were dismissed on August 5, 2015 (*see* ECF No. 30) and never repleaded.

undisputed except where noted otherwise and rely only on admissible evidence. Richard Moore is an African American Chicago resident who worked for Transport Holdings as a local hauler from March 17, 2014 until his termination on September 2, 2014. *See* Def.'s Statement of Facts ("DSOF") ¶ 1, 6, 38. A local hauler relocates vehicles during the day and is not typically away from home overnight. *See id.* at ¶ 7. When a hauler (also known as a "driver") is hired by Transport Holdings, he or she is required to sign a damages claim policy. *See id.* at ¶ 10. Moore signed the standard damage claim policy, which provided that he would be liable for certain amounts of money if vehicles were damaged and that he would be terminated if three vehicles were damaged within one year. *See id.* at ¶ 10, 11, 13.

Transport Holdings alleges that Moore damaged four vehicles during his six-month employment, although he was only held responsible for three of them.[3] The parties agree that in June 2014, Moore transported a 2011 Ford Taurus which incurred $1,316.03 in damages. *See* DSOF ¶ 14, 16. Moore signed for and agreed to pay $1,000 of the damages, but alleges he did so under threat of termination and being sent home without pay. *See* DSOF ¶ 17, 18; Pl.'s Statement of Facts ("PSOF") ¶ 17-18. Moore further states that he told his supervisor that he did not cause the damage to the vehicle, although he did not write any comments in the "Employee Comments" section of the form accepting liability. *Id*.

A second incident occurred on July 18, 2014, when Moore picked up a load of Toyota Camrys. *See* DSOF ¶ 23. Transport Holdings received a claim for $1,493.60 of roof damage to

---

[3] The parties agree Transport Holdings did not charge Moore for damage to a Chevy Tahoe that occurred while Moore was using a truck with bent trailer flaps. *See* DSOF ¶ 19, 22; PSOF ¶ 22. Transport Holdings argues it never disciplined Moore in any way for the Tahoe damage, while Moore says it was referenced by a Transport Holdings employee in an email and when he was fired. *See* DSOF ¶ 22, PSOF ¶ 22. Moore did agree in his deposition that the resolution of the Tahoe incident was a "fair resolution" but later reiterated that the incident was still "under my file as a damage that I did." *See* Def.'s Ex. 2, Moore Dep. Feb. 23, 2016 95:20-96:1.

2

one of the Camrys, which Moore signed for and agreed to pay for. *See id.* at ¶ 26-27. Moore again asserts that he was threatened with termination and sent home without pay, which caused him to sign the admission. *See id.* at ¶ 27.

Finally, sometime between July 4 and September 2, 2014, Moore transported a Hummer, which the recipient reported had a shattered windshield, scratches on the roof, and a broken light. *See* DSOF ¶ 31, 37. Moore alleges that he submitted a "damage report along with a picture of the vehicle taken at the pick-up location," which the Court construes to mean that the vehicle was already damaged when he picked it up. *See* PSOF ¶ 34. Moore stated in his deposition that the photo he submitted showed another company truck reflected in the windshield, suggesting he was still at the pick-up location, although the photo may have been lost when his phone was later damaged. *See* Moore Dep, 134:9-135:4. Moore has produced neither the photo he describes nor the damage report Moore says he filled out.[4]

Following the damage to the Hummer, Transport Holdings terminated Moore on September 2, 2014. *See* DSOF ¶ 38. He was informed by phone and by letter that his termination was a result of excessive vehicle damage. *See id.* at ¶ 39-40. Moore filed a complaint with the EEOC and received his right to sue letter on September 12, 2014. *See* Compl. at 8.[5] Moore then filed this lawsuit *pro se* on December 9, 2014. Throughout the course of this litigation, Moore has raised several incidents in addition to his termination, including an incident in which he alleges he was denied hotel accommodations following a breakdown of his truck (*see* PSOF ¶ 64), being assigned low-paying trips after he revoked an attempted resignation (*see id.* at ¶ 59),

---

[4] Although Moore did attach a photo of what appears to be a Hummer with a cracked windshield to his summary judgment response, it does not display any reflection on the windshield or any other indicia of when or where it was taken. *See* Pl.'s Ex. at 14, ECF No. 62-1.

[5] The complaint was filed *pro se* on a standardized form and so has page numbers rather than exhibits and numbered allegations.

and that Transport Holdings initially failed to report his wages to state employment agencies and gave negative references to Moore's prospective employers (*see id.* at ¶ 74, 78). Essentially all the facts underlying those incidents are disputed (including whether they happened at all). *See* DSOF ¶ 59, 65, 72, 74, 79.

## DISCUSSION

Transport Holdings has moved for summary judgment as to all of Moore's claims. According to the complaint, all of these are racial discrimination claims that he was terminated or treated differently because he is African American. As the Seventh Circuit has said, "when all is said and done, the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination." *Liu v. Cook Cnty.*, 817 F.3d 307, 316 (7th Cir. 2016). Moore, as plaintiff, must offer admissible evidence that suggests, directly or indirectly, that Transport Holdings engaged in unlawful discrimination based on race. *See id.*

In order to make it past summary judgment, the nonmoving party (here, Moore) must show there is sufficient evidence that would allow a jury to return a verdict for him. *Naik v. Boehringer Ingelheim Pharms.*, 627 F.3d 596, 599 (7th Cir. 2010). The Court can only consider evidence that would be admissible under the Federal Rules of Evidence, except that depositions and affidavits are also allowed (to substitute for how those individuals would presumably testify at trial). *See Hartford Fire Ins. Co. v. Taylor*, 903 F. Supp. 2d 623, 640 (N.D. Ill. 2012). A person who gives a deposition or writes an affidavit must have personal knowledge of the facts he states, or that information is not admissible. *See Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 n.2 (7th Cir. 2011). Hearsay, a statement made out of court offered to prove that what it says is true, is inadmissible at summary judgment just as it is in trial. *See MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011).

Here, Moore has not shown that he was discriminated against on the basis of his race. He admits that he has insufficient direct or circumstantial evidence of racial animus to support a jury verdict that he was terminated due to his race and expressly relies on the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See* Pl.'s Mem. at 4, ECF No. 65. Conventionally, under *McDonnell Douglas*, a plaintiff in a discrimination case must provide evidence of four things to establish a *prima facie* case of discrimination: that he is a member of a protected class, that his job performance met the employer's legitimate expectations, that he suffered an adverse employment action, and that another similar individual who is not in the protected class was treated more favorably than he was. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012).[6] The parties agree that Moore is a member of a protected class and that he suffered an adverse employment action when he was terminated. However, Transport Holdings alleges that Moore has not put forth sufficient evidence to show either that he was meeting Transport Holding's expectations or that he was treated differently than any employee of another race. Taking heed of the Seventh Circuit's instruction that the fundamental question in summary judgment is discrimination, the Court addresses the latter argument first.

Moore has not demonstrated that other employees, who are not African American, were treated better than he was. Transport Holdings has ten haulers at Moore's location, of which three are black and seven are white. *See* DSOF ¶ 41. Five white employees are mentioned in the

---

[6] The Seventh Circuit has explained that the "indirect method" of proof is just "a formal way of analyzing a discrimination case when a certain kind of circumstantial evidence— evidence that similarly situated employees not in the plaintiff's protected class were treated better—would permit a jury to infer discriminatory intent." *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015). Although the utility of distinguishing between "direct" and "indirect" methods of proof has been the subject of substantial criticism, the Court of Appeals has also noted that "litigants and courts still properly discuss racial discrimination claims under Title VII . . . using the language of either the direct or indirect method of proof." *Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 790 (7th Cir. 2015). Because the plaintiff has defended his claim using the indirect method, the Court addresses the claim on those terms.

parties' submissions: Christopher Madsen, Roger Pratt, Scott Brown, Arthur Putnam, and Joshua Smith. *See id.* at ¶ 49-54. The parties agree that all drivers, black and white, were required to reimburse Transport Holdings for damaged vehicles, so it cannot have been discrimination to require Moore to pay for damaged vehicles in general. *See id.* at ¶ 54. Transport Holdings could not find any record of an employee named "Roger Pratt" and Moore has not introduced any evidence suggesting that anyone named "Roger" was treated differently than him. *See id.* at ¶ 50.

According to Transport Holdings, both Arthur Putnam and Scott Brown were terminated (as Moore was) for excessive vehicle damage claims. *See id.* at ¶ 52-53. The records from Transport Holdings reflect that Putnam was terminated after damaging four vehicles in two incidents within a week of each other. *See* Def.'s Appx. Ex. 3, Tab 6, ECF No. 53-2 at 41. Brown's termination letter states that he was fired for causing $5,000 in damages because this was "not your first incident with unnecessary damage and repair costs to the company." *See id.* at Tab 7, ECF No. 53-2 at 43. These incidents do not reflect white workers being treated differently than Moore – Putnam was fired after damaging three vehicles (he also damaged a fourth during the second incident, but this is not evidence Transport Holdings violated the three vehicle rule). Although it is not clear how many vehicles Brown damaged, a logical inference from the "not your first incident" language is that it may well have been his second incident. Neither of these suggests that white workers were not fired if the company believed they damaged three vehicles.[7]

According to Transport Holdings' records, Joshua Smith was terminated after he fell asleep at the wheel in the first 90 days on the job and caused an accident. *See id.* at Tab 8, ECF

---

[7] Even if the company was wrong and an employee did not in fact damage vehicles, as long as the company believed the employee had done so, it is still treating the employees equally when it disciplines the employee. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011).

No. 53-2 at 45. Moore suggests that Smith was placed on (presumably paid) light duty after the accident, but the cited exhibit (Exhibit 25) makes no mention of any light duty or other paid time between the accident and his termination. Without evidence to support this allegation, the Court cannot consider it. Therefore, Smith does not seem to have been treated any better than Moore – he had a single, albeit more serious, infraction and was terminated for it. To the extent that any comparison is possible, it does not suggest Smith was given a better deal because of his race.

Thus, the only white employee remaining is Christopher Madsen. On his first (and only) claim for vehicle damage, Madsen was charged the $1,000 maximum (the same as Moore was for the Ford Taurus, his first damage claim).[8] *See* Def.'s Appx. Ex. 20. Moore alleges that Madsen was not sent home when he did not initially sign the promissory note (while Moore was) and Madsen waited almost a year to sign. *See* PSOF ¶ 18, 49. However, the only evidence Moore produces that Madsen was treated differently is an affidavit from Terranda Clark, who reveals that "Chris" (presumably Christopher Madsen) told her that he felt "pressured" to sign and that he was being "threatened with termination if he did not sign" and agree to pay for the damage even though he believed the damage was not his fault. *See* PSOF Ex. 3, ECF No. 62-1 at 16. Initially, it is worth noting that Clark's affidavit says nothing about Madsen not being sent home, and in fact describes the same threats and duress Moore alleges happened to him. More importantly, this is classic hearsay – Moore wants to use what Clark says Madsen said to her as

---

[8] One slight difference between Madsen and Moore is that Madsen was charged for "repairs to [a] 2012 Hyundai Sonata and a rental car." *See* Def.'s Appx. Ex. 20. The Court is unclear whether Madsen damaged two cars or whether he was billed for damage to a Hyundai that resulted in the company having to pay for a rental car. The defendant characterizes the facts as Madsen being held responsible "for damage to a Hyundai Sonata." *See* DSOF ¶ 49. Moore does not argue Madsen paid less than he should have for an incident involving two cars, and given that Moore was not charged for a separate incident and Putnam was fired for damaging four cars in two incidents, at best this discrepancy indicates that Transport Holdings was occasionally inconsistent about measuring how many vehicles were damaged in a single incident.

proof that what Madsen described really happened. However, as discussed above, hearsay is not admissible at summary judgment. *See Hartford Fire Ins. Co.*, 903 F. Supp. 2d at 640. Moore would need to either provide records from Transport Holdings or testimony from Madsen himself (or someone who saw the event take place and thus has personal knowledge).[9]

Similarly, Moore's own affidavit states that "Chris Madsen, who trained me, told me about a number of times where he had to get a hotel while at work" and the company paid for it. *See* PSOF, Ex. 10, ECF No. 62-1 at 58. Again, this evidence is inadmissible hearsay that the Court cannot consider. Moore cannot rely on what Madsen said as proof that Madsen was actually able to get hotel rooms paid by the company. Therefore, Moore has not presented any admissible evidence that he was discriminated against compared to Transport Holdings' white drivers.[10]

As a last resort, Moore references other EEOC complaints filed by other employees alleging various types of discrimination (including age, disability, and gender discrimination). As an initial matter, Moore cannot prove he was treated differently based on his race by providing evidence that other employees believed they were treated differently because of other characteristics. *See Moss v. Blue Cross & Blue Shield of Kan., Inc.*, 241 F.R.D. 683, 692 (D. Kan. 2007). Furthermore, Moore has not attached these other EEOC complaints, and the Court cannot speculate as to whether they are relevant to the time period during which Moore was employed or whether they might contain facts that suggest Moore was treated differently than white workers. Therefore, the motion for summary judgment is granted.

---

[9] The company moved to strike Clark's affidavit in its entirety. Having addressed the concerns animating that motion, it is denied as moot.

[10] Moore does not argue that he introduced any evidence that white workers were treated differently with regard to his other complaints, such as the quality of his work after he resigned (and then revoked his resignation) or in how quickly Transport Holdings provided information to state unemployment agencies.

\* \* \*

At summary judgment in a case such as this, the Court must ask whether a reasonable trier of fact could infer discrimination from the admissible evidence. *See Liu v. Cook Cnty.*, 817 F.3d 307, 315 (7th Cir. 2016). On this record, a reasonable trier of fact has no admissible evidence that Moore was treated worse than similarly situated white colleagues. Therefore, Transport Holdings' motion for summary judgment must be granted.

Dated: August 17, 2017

John J. Tharp, Jr.
United States District Judge